## CARAMAGNO v. UNITED STATES.
### No. 7078.

District Court, D. Massachusetts.
March 24, 1941.

742

Arthur P. Teele and Brayton Morton, both of Boston, Mass., for plaintiff.

C. Keefe Hurley, Asst. U. S. Atty., and Edmund J. Brandon, U. S. Atty., both of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is an action brought under a special congressional act (H.R. 6469) which conferred jurisdiction on this court to hear, determine, and render judgment, as if the United States were suable in tort, upon the claim of Anthony Caramagno for damages, alleged to have been caused by blasting operations, to a restaurant and two houses at Salisbury, Massachusetts, owned by him.

The petition alleges that certain blasting and excavating "was done negligently, carelessly, and in an improper manner, and without taking suitable precautions to prevent injury to the petitioner's property," through which he suffered damage. The defendant denies that its method of blasting was improper or negligent, or that it caused injury to the plaintiff's property.

### Findings of Fact.

The property which is alleged to have been damaged by the improper blasting of the defendant's agents or servants consists of a restaurant, a storehouse, and a dwelling house. The storehouse and restaurant buildings are owned by the plaintiff Anthony Caramagno. The dwelling house is not owned by him, but is owned by his wife. On all the evidence submitted, I cannot find that the plaintiff has any right, title, or legal interest in the dwelling house, and, accordingly, my decision must be restricted to the question of damage to the restaurant and the storehouse. The identity of the dwelling house as one of the houses referred to in the act is established, but Congress has not extended to anyone other than Anthony Caramagno the right to sue, and it has limited his capacity to sue for injury to property owned by him. It is "well established that suit may not be maintained against the United States in any case not clearly within the terms of the statute by which it consents to be sued." United States v. Michel, 282 U.S. 656–659, 51 S.Ct. 284, 285, 75 L.Ed. 598. "Beyond the letter of such consent the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the government." Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 86, 39 L.Ed. 108.

In 1935, the plaintiff purchased land with a building thereon which fronted on Route No. 1 in Salisbury. The building is the one hereinafter referred to as the storehouse. In June of 1935, the plaintiff commenced to construct the building, which is hereinafter referred to as the restaurant, at a point about one hundred fifty feet back from the highway. He did not employ a contractor or builder to erect the building, but built it himself, hiring day labor of such types as he determined were necessary and helpful. He had no particular qualifications as a builder, although he had "built a few pieces of property".

The area on which he constructed the restaurant was a filled-in area of swampland. The subsoil was well saturated with water to a point within a foot of the filling that was placed thereon. In constructing the foundation of the restaurant, the plaintiff dug a series of holes which were approximately twelve feet apart from center to center to a depth varying between three and six feet. In each instance, he went down to a point where the subsoil was solid. After excavating these holes, which were approximately four to five feet square, the plaintiff placed in the bottom of each hole two twelve by twelve cross pieces. The holes without any further forms were then filled with concrete. After the concrete-filled holes had been leveled off, concrete bridges were run between them, and on this bridgework was placed the foundation of the building. This type of construction was more than adequate for the type of building that

the plaintiff erected, and, as testified to by the plaintiff's expert witness, it would support a structure of one hundred fifty tons or more, and the structure erected by the plaintiff · "was nowheres near that weight". That such a heavy base was placed beneath the foundation was probably due to an attempt to make up for the defection in the subsoil. After the foundation was securely in, the superstructure was built, and the place commenced to operate as a restaurant.

In March of 1936, which was some three months before the blasting complained of, a serious flood occurred in the immediate vicinity of the restaurant, and the entire cellar was filled with water. Whether this flood caused a change in the subsoil itself is not clear, but I find that at least one well-defined crack appeared in the wall of the cellar immediately thereafter. A little later, settlement of the building generally took place as a result of the flood.

In May of 1936, the defendant was laying a water main along the highway in front of the plaintiff's property. Ledge, encountered in the trench, was removed by blasting. There were several blasts in front of the plaintiff's property. After this blasting, which was on or about May 29, 1936, it came to the plaintiff's attention that there were additional cracks in the foundation and in the walls of the structure above. At that time he showed this damage to various persons who called at his restaurant. He made no complaint to any official at that time that the blasting had caused damage to his restaurant other than to point out to one of the foremen certain cracks which he said had been caused by blasting. In addition to these cracks there was also a separation of an inch or two between the steps that served the entrance to the restaurant and the main structure itself.

The question that this court must decide is whether this damage was due to blasting that was improperly· or negligently done.

■ The blasting was done by an experienced blaster. Although there was some testimony to the effect that seventy-five per centum dynamite was used in the blasting, I find as a fact that in the blasting which the plaintiff claims injured his restaurant and storehouse sixty per centum dynamite was used. It was at a later time in the construction operations of the main and at a point far removed from the plaintiff's property that seventy-five per centum dynamite had to be used because of the unavailability of other dynamite. In dynamiting in the section that was nearest the plaintiff's property, the method used was to drill about six holes at a time, and, then, in accordance with their depth, to insert varied amounts of dynamite in the holes. In those that went down six feet, two sticks were inserted, and in the shallower two or three foot holes about a quarter ˳of a stick was inserted. After about eight to ten sticks of dynamite had thus been inserted in the series of holes, they were tamped, and over them was laid about a cord of wood, and a large steel sheet, all securely fastened by a chain. The dynamite was exploded electrically from a point some distance away. In conducting the explosive operation directly in front of the storehouse and not more than twelve feet from it, the same procedure was followed, and, in addition, the windows on the front of the storehouse were boarded up prior to the explosion. After this particular explosion, it was found that one windowpane had been broken.

As a basis for his claim the plaintiff asserts that the method of blasting was improper, and that it was done negligently. He argues that the percentage of dynamite used was too high, that the quantity used was too great, and that the method of drilling vertical holes instead of slanting holes was not proper. The court heard the testimony of two experts whose testimony on similar hypothetical questions varied greatly. The expert offered by the plaintiff to support his testimony that the blasting procedure was not correct relied in part on the fact that the blast resulted in damage, and assigned that as the ultimate criterion of safe construction. I cannot follow his reasoning, which at best is not legalistic.

■ The doctrine of res ipsa loquitur has no place in actions of this type. Murphy v. Lowell, 128 Mass. 396, 35 Am. Rep. 381. The burden is on the plaintiff to show some specific act or acts of negligence, and to show further that such negligence directly contributed to the result. Hutchinson v. Boston Gas Light Co., 122 Mass. 219.

There is serious question whether the damage suffered by the plaintiff was in any way connected with the blasting operations. The cases of Goldman v.· Regan,

247 Mass. 492, 142 N.E. 701, and Coffey v. West Roxbury Trap Rock Co., 229 Mass. 211, 118 N.E. 235, are clearly distinguishable on the facts. In those cases there was clear evidence of damage occurring simultaneously with blasts, and only attributable to them. In the Coffey case, which is relied upon by the plaintiff, the real question which the court said was properly submitted to the jury was not whether the blast was negligent or improper, but whether the defendant caused the blasting which damaged the plaintiff. In the instant case, there is much doubt in my mind that the damage occurred directly as a result of the blasting, and there is no credible evidence that the manner and mode of blasting was either improper or negligent.

On all the evidence I find that the percentage of dynamite used by the defendant in its blasting operations was proper under the circumstances. I find that the quantity of dynamite used in these blasting operations was not excessive, but was the usual and customary amount for the particular type of blasting. I find that the degree of diligence, care and skill used in dynamiting was reasonable and proper. I cannot find that the blasting was the proximate cause of the damage. It is well settled that a municipality or other political subdivision, charged with the duty of laying water mains, is not liable in tort for all damages that may be caused by the blasting of rocks necessary in such construction, but only for such damages as are occasioned by the carelessness and unskillfulness of its agents doing the work. See Murphy v. Lowell, supra.

### Conclusion of Law.

On all the evidence I conclude that the plaintiff's property was not damaged by the improper or negligent blasting conducted by the defendant, its agents or servants. Judgment is to be entered for the defendant. The plaintiff's requests for rulings are denied.