**David M. WARNER, Plaintiff,**

v.

**NORFOLK & WESTERN RAILWAY CO., Defendant.**

**Civ. A. No. 90–0016–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 30, 1991.

Elizabeth P. Coughter, Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., Charlottesville, Va. and Phillip D. Gaujot, Charleston, W.Va., for plaintiff.

Ronald D. Hodges and Charles F. Hilton, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for defendant.

### MEMORANDUM OPINION

MICHAEL, District Judge.

The matter presently before the Court is defendant Norfolk & Western Railway Company's (hereinafter "Norfolk & Western's") motion to dismiss the plaintiffs' claims for damages pursuant to a theory of strict liability in this consolidated civil action. Essentially, the plaintiffs argue that they were injured as a result of a collision between the vehicle in which they were

travelling and a train owned and operated by defendant Norfolk & Western. According to the plaintiffs, the operation of a train is an "ultra-hazardous" or "abnormally dangerous" activity within the Commonwealth of Virginia that subjects the owner/operator to strict liability in tort for any injury that results through the operation of the train. In response, defendant Norfolk & Western filed the present motion to dismiss the strict liability claims in which it maintains that the Commonwealth of Virginia has never regarded the operation of a train as an "ultra-hazardous" or "abnormally dangerous" activity and that the plaintiffs are, therefore, barred from recovering pursuant to such a theory. All parties have thoroughly analyzed the motion to dismiss through legal memoranda that they have filed, and all parties have agreed to waive oral argument on this motion. Accordingly, the matter is ripe for disposition.

## Factual Background

On March 14, 1988, at approximately 8:25 a.m., Terry Wayne Rexode was driving a 1977 Mercedes–Benz truck in a westerly direction on State Route 649 in Rockingham County, Virginia. The truck was owned by Mr. Rexode's employer, E.L. Ash and Company. Apparently, Mr. Rexode and his co-worker and passenger, David Michael Warner, were using the truck within the scope of their employment on the morning in question.

Although there is considerable disagreement concerning the exact circumstances, a railway locomotive, owned and operated by Norfolk & Western, struck the truck driven by Mr. Rexode at a public railroad crossing on Route 649 on the morning in question. As a result of the collision, Mr. Rexode was killed, and Mr. Warner was seriously injured. Subsequently, Mr. Warner and Mr. Rexode's estate filed separate lawsuits in this Court against Norfolk & Western alleging a variety of theories for recovery including strict liability. Numerous counterclaims and third-party complaints have been filed in these cases, but notwithstanding their complex alignment, the parties agreed to the consolidation of their cases

for further proceedings at a pre-trial conference conducted on September 28, 1990.

The matter presently before the Court is Norfolk & Western's motion to dismiss the plaintiffs' strict-liability claims from the consolidated case. As indicated above, this motion has been thoroughly examined in the legal memoranda filed in the case, and the parties have agreed to waive oral argument on the motion. Norfolk & Western's motion to dismiss the strict-liability claims is, therefore, ripe for resolution, and as the following pages will more carefully explain, the motion must be granted by this Court.

## Legal Analysis

The Supreme Court of the Commonwealth of Virginia has never squarely addressed the issue of whether the operation of a railroad can be considered an "ultra-hazardous" or "abnormally dangerous" activity. Although counsel has cited to this Court's attention many cases relevant to this analysis, counsel has not presented to the Court, nor has the Court's own research revealed, one case in which the Virginia Supreme Court has stated, once and for all, that strict liability does or does not apply to injuries that occur as the result of the operation of a railway. In the absence of such state precedent, this Court's task is "to divine what [Virginia's] highest court would take as its rule," *GAF Corp. v. County School Bd.*, 629 F.2d 981, 983 (4th Cir.1980), concerning the question of whether a railroad company can be strictly liable for injuries that it causes. *See Morgan v. American Family Life Assur. Co.*, 559 F.Supp. 477, 480 (W.D.Va.1983).

As an initial proposition, it must be noted that strict liability has been applied to numerous "ultra-hazardous" or "abnormally dangerous" activities by the courts of the United States. *See* 74 Am.Jur.2d *Torts* §§ 14–15 (1980); Nolan & Ursin, *The Revitalization of Hazardous Activity Strict Liability*, 65 N.C.L.Rev. 259 (1987) [hereinafter *Revitalization*]. Strict liability has been imposed on those that injure people or property through, *inter alia*, (1) blasting, *see, e.g., M.W. Worley Constr. Co. v. Hun-*

gerford, Inc., 215 Va. 377, 210 S.E.2d 161 (1974), (2) crop dusting, see, e.g., Loe v. Lenhardt, 227 Or. 242, 362 P.2d 312 (1961), (3) oil-well drilling, see, e.g., Green v. General Petroleum Corp., 205 Cal. 328, 270 P. 952 (1928), (4) fumigating or exterminating insects, see, e.g., Luthringer v. Moore, 31 Cal.2d 489, 190 P.2d 1 (1948), (5) transporting, storing or manufacturing explosives, see, e.g., Chavez v. Southern Pac. Transp. Co., 413 F.Supp. 1203 (E.D.Cal.1976), and (6) transporting flammable substances on highways, see, e.g., Siegler v. Kuhlman, 81 Wash.2d 448, 502 P.2d 1181 (1972), cert. denied, 411 U.S. 983, 93 S.Ct. 2275, 36 L.Ed.2d 959 (1973). Strict liability has also been imposed upon those who allow dangerous instrumentalities to escape from their property, see, e.g., Parker v. Larsen, 86 Cal. 236, 24 P. 989 (1890), and upon those who cause ground damage as a result of their aviation activities, see generally 8 Am.Jur.2d Aviation § 93 (1980). This Court has, however, been completely unable to find even a single case in which strict liability has been applied to the operation of a railroad. See Revitalization at 272.

The approach taken by the First and Second Restatements of Torts is also illuminating on the question of whether strict liability should be applied to the activities of a railway company. The First Restatement of Torts imposes strict liability on one who carries on an "ultra-hazardous" activity. See Restatement (First) of Torts §§ 519–20 (1938). An activity is considered "ultra-hazardous" if it "(a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of utmost care, and (b) is not a matter of common usage." Id. at § 520. From the initial promulgation of the First Restatement, however, it has been universally understood that railroad companies are to be excluded from the application of this strict-liability doctrine because the operation of a railroad is a matter of common usage. See Ehrenzweig, Negligence Without Fault, 54 Calif. L.Rev. 1422, 1453 (1966); Revitalization, 65 N.C.L. Rev. at 266.

The language of the Second Restatement of Torts differs considerably from that of the First Restatement. See Revitalization at 266. Referring to its strict-liability rule as applying to "abnormally dangerous" activities, section 519 of the Second Restatement provides that "one who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519 (1977). Section 520 then lists six factors to be considered in determining whether an activity is "abnormally dangerous:" (1) the "existence of a high degree of risk of some harm to the person, land or chattels of others;" (2) the "likelihood that the harm that results from it will be great;" (3) the "inability to eliminate the risk by the exercise of reasonable care;" (4) the "extent to which the activity is not a matter of common usage;" (5) the "inappropriateness of the activity to the place where it is carried on;" and (6) the "extent to which its value to the community is outweighed by its dangerous attributes." Id. at § 520. Once again, however, the drafters' comments make it abundantly clear that the operation of a railroad is not to be subject to this type of strict liability. See id. at § 520 comment i (stating that automobiles and railroads are matters of common usage).

Accordingly, there is little, if any, authority for the plaintiffs' position that the defendant railroad company should be strictly liable for the injuries caused by the collision that occurred in the present case at the public railroad crossing. This conclusion is entirely consistent with the scarce Virginia case law that does exist on the subject. For example, the Virginia Supreme Court in its recent Philip Morris, Inc. v. Emerson opinion reviewed those activities in which strict liability has been held to apply and made the following comments:

> We have applied strict liability in a blasting case where property was damaged by dirt and debris from the blast. In [another case], we extended the rule to allow recovery for property damage

caused by concussion and vibration from blasting. Both cases, however, were based upon the intrinsically dangerous and ultra-hazardous activity [of blasting] since it is impossible to predict, with certainty, the extent of severity of a blast. Implicit in these holdings is the fact that injuries may result from blasting, despite every reasonable precaution.... [The instant plaintiff] relies on the criterion stated in the [Second] Restatement ... of Torts ... for determining whether an activity is ultra-hazardous. One criterion is an inability to eliminate the risk by exercise of reasonable care. That criterion is not met here because [the defendants] all had the ability to eliminate the risk of injury by exercising reasonable care.

235 Va. 380, 406, 368 S.E.2d 268, 278 (1988) (citations omitted). Two facts are particularly important about the *Philip Morris* case for the present analysis. First, the Virginia Supreme Court held that strict liability did not apply where the disposal of toxic chemical waste was concerned—an activity arguably more properly suited to the imposition of the "ultra-hazardous" or "abnormally dangerous" strain of strict liability than the operation of a railroad. Second, the above-quoted passage illustrates how sparingly the Virginia Supreme Court has allowed the doctrine of strict liability to apply.

What is probably most fatal to the plaintiff's argument, however, is the following statement contained in the Virginia Supreme Court's opinion in *Atlantic C.L.R. Co. v. Clements:*

In order to justify a recovery by the plaintiff against the railroad company, the burden was on the plaintiff, first, to prove that the defendant was guilty of *negligence* in failing to give adequate, reasonable, and timely warning of the approach of its train to persons approaching the [railroad crossing], and, second, that such *negligence* was the proximate or contributing cause of the death of [plaintiff's decedent].

184 Va. 656, 665, 36 S.E.2d 553, 560 (1946) (emphasis added). By stating the necessary elements that must be proved by the plaintiff to recover in a case involving an accident that occurred at a railroad crossing, the Virginia Supreme Court clearly signalled that the plaintiff's route to recovery was through the negligence doctrine and not through a strict-liability doctrine. *See* 65 Am.Jur.2d *Railroads* § 477 (1980) ("Railroad companies owe to the traveling public the duty of exercising reasonable care to avoid injury to persons at places where the tracks and the highway cross, and this duty is owing both in the operation of trains, and in the maintenance of crossings. The standard of care is that of ordinary care under the circumstances, in other words, such precaution as prudent management with respect to public safety requires, and the railroad company is not an insurer of the safety of a traveler at its highway crossing."). Put another way, it would be entirely unnecessary to establish a negligence *prima facie* case if a plaintiff could recover pursuant to a strict-liability theory, and by holding that a plaintiff must establish a negligence *prima facie* case, the Virginia Supreme Court seemed to rule out recovery for plaintiffs pursuant to the application of strict-liability principles to the operation of a railroad.

Therefore, based upon the lack of case law from other jurisdictions to the contrary, the positions adopted by the First and Second Restatements of Torts, and the Virginia case law on the subject, this Court believes that, within the Commonwealth of Virginia, the operation of a railroad is not an "ultra-hazardous" or "abnormally dangerous" activity to which strict liability applies. In order to recover in the present case, the plaintiffs may not rely on the doctrine of strict liability, but must instead prove Norfolk & Western's negligence, and to this end, Norfolk & Western's motion to dismiss the plaintiffs' strict-liability claims must be granted. Before concluding, however, two additional points must be addressed.

In their legal memorandum in opposition to Norfolk & Western's motion to dismiss their strict-liability claims, the plaintiffs argue that the opinion in *Bunn Executrix v. N.F. & D. Ry. Co.*, 217 Va. 45, 225 S.E.2d

375 (1976), stands for the proposition that the Virginia Supreme Court might, indeed, allow the imposition of strict liability on railroad companies for damages that they cause due to their "ultra-hazardous" or "abnormally dangerous" activities. The plaintiffs, however, misread *Bunn*. Like the present case, the *Bunn* case involved an accident between an automobile and a train locomotive that occurred at a railroad crossing. In that case, the Virginia Supreme Court held that the trial court was not in error in refusing to submit to the jury the question of whether the railroad crossing at issue was "extra-hazardous." *See id.*, 217 Va. at 46, 225 S.E.2d at 662. The present plaintiffs have taken that holding to stand as support for their argument that strict liability should be employed in the present case due to Norfolk & Western's pursuit of "ultra-hazardous" or "abnormally dangerous" activities.

Contrary to the plaintiffs' reading, the term "extra-hazardous" was used in a negligence context within the *Bunn* opinion. The *Bunn* court was concerned with whether there were conditions at the railroad crossing that would increase the level of care that the railroad company that maintained the crossing could reasonably have been expected to take in order to avoid the risk of harm to the general public. If the railroad crossing was heavily travelled by automobiles and was located at a busy intersection, the *Bunn* court suggested that the railroad company in charge of the crossing, pursuant to a negligence standard, might have been required to provide a flagman, a signal-gate, etc. due to these conditions that would not otherwise have been required if the crossing were, for example, situated in a more isolated location. Accordingly, the *Bunn* court's use of the term "extra-hazardous" had absolutely nothing to do with the concept of strict liability being imposed on those who conduct "ultra-hazardous" or "abnormally dangerous" activities. The plaintiffs confuse the terms "extra-hazardous" and "ultra-hazardous," and their citation of the *Bunn* case, in truth, does nothing to advance the present analysis.

Finally, in their legal memorandum in opposition to the defendant's motion to dismiss their strict-liability claims, the plaintiffs claim that the Virginia Supreme Court's recognition of the Federal Safety Appliance Act, 45 U.S.C. § 1 et seq. (1986), in certain circumstances supports their position that the highest court in Virginia would likewise recognize strict liability for the "ultra-hazardous" or "abnormally dangerous" activities engaged in by railroad companies generally. Actually, the Federal Safety Appliance Act and strict liability premised upon the pursuit of "ultra-hazardous" or "abnormally dangerous" activities have absolutely nothing in common, and the Virginia Supreme Court's recognition of the application of the Federal Safety Appliance Act has no probative value on the question of whether that court would allow strict liability to be imposed on railroad companies pursuant to the "ultra-hazardous" or "abnormally dangerous" activity theory. Therefore, the cases cited by the plaintiff that are concerned with the Federal Safety Appliance Act do not dissuade this Court from ruling that the Virginia Supreme Court would not impose strict liability on railroad companies for the damages that their allegedly "ultra-hazardous" or "abnormally dangerous" activities cause.

### Conclusion

For the above-stated reasons, the defendant's motion to dismiss the plaintiffs' strict-liability claims from the present consolidated case must be granted.