# Staunton

B. G. Young & Sons, Incorporated v. J. W. Kirk, Et Al.

September 2, 1960.

Record No. 5115.

Present, All the Justices.

The opinion states the case.

*Stuart B. Campbell* (*A. A. Campbell; Campbell & Campbell,* on brief), for the plaintiff in error.

*Eugene L. Nuckols* (*Alton I. Crowell; Crowell, Deeds & Nuckols,* on brief), for the defendants in error.

Miller, J., delivered the opinion of the court.

 This action was instituted by J. W. Kirk and Velma P. Kirk, hereinafter called plaintiffs, against B. G. Young & Sons, Incorporated, hereinafter called Young or defendant, to recover $4,436.93 damages to plaintiffs' dwelling house, water system, and land. The motion for judgment alleged that the damages resulted from (a) blasting negligently done by Young in constructing a nearby State highway, and (b) by negligent installation of drainage facilities incident thereto.

Upon conclusion of plaintiffs' evidence Young moved to strike and declined to offer any evidence. The motion to strike was overruled and upon issue put to the jury defendant was cast in the sum of $2,250 and judgment entered accordingly. We granted defendant an appeal.

Several assignments of error are taken by Young but the dominant issue is whether or not the evidence is sufficient to prove that Young was negligent (a) in the blasting that was done or (b) in the construction of the drainage ditches and facilities incident to building the highway.

Plaintiffs owned a four-acre tract of land on which was situate a "solite block dwelling" with concrete floors and roof of basic wooden construction built in 1956 by Kirk, a brick mason. There was some excavation when the house was erected, but no fill was necessary, and the foundations and footings were good. The cost of material in the house was between $4,000 and $4,500 but labor was only $350 for Kirk did most of the construction. On the land were a spring and reservoir from which plaintiffs and two neighbors obtained their water supply, and a part of the bottom land was used for a pasture.

In March, 1958, Young, under a contract with the State Highway Department, began constructing a highway in the area, and because of rock formations considerable blasting was necessary.

Kirk testified that prior to March, 1958, J. E. Williams, the Highway Department inspector on the job, inspected the house, and there were no cracks observable, but during March when defendant started blasting five or six hundred feet northeast of the dwelling, he noticed cracks appearing in the walls. During the blasting, which continued for about three months, he could feel vibrations and at times they shook doors and windows. In May, 1958, he complained to Williams who, along with Cecil Lyle, defendant's superintendent, looked at the water system, but the blasting continued for some time thereafter. Both inside and outside walls were cracked and in April the

concrete floors of the bedroom and kitchen were cracked. No cracks appeared in the blocks, all being in the mortar between the blocks, and after July, 1958, when the blasting had ceased, Kirk noticed no further damage to the house.

Concerning damage to the water system, he said that before construction started, they had plenty of water from the spring; though it became dingy if there was an excessive amount of rain, it was still useable. Since construction began, great quantities of muddy water have run through the property into the spring where he measured a 12-inch deposit of red mud. The blasting also caused the reservoir to stay dry a part of the year, and he discovered a crack in the retaining wall not previously observed. Now water pressure to the house is poor; only a small stream comes in and that has been "real muddy, red mud or reddish cast to it." Previously they had a forty-pound pressure. He also said that theretofore the water flowing from the hills came down a branch near the property, but the branch had never overflowed the retaining wall into the spring. Now the water comes through a five-foot culvert placed under the driveway. Subsequent to installation of the culvert and after Young cut an inadequate drain ditch, heavy rains would cause an accumulation of water that overflowed the ditch and ran through the field into the spring. Because the first ditch cut by defendant did not accommodate the increased flow through the culvert, Kirk complained to the inspector several times and showed him the situation before it was partially corrected in January, 1959, by digging a larger ditch.

A half acre or more of plaintiffs' bottom land had been rich, black, fertile soil upon which they raised hay, but now it is covered by an inch of mud and is so marshy that it cannot be mowed with a tractor. Their driveway through the bottom land has been rendered soft from water draining thereon, and passage over it is now difficult. To remedy the situation that area would have to be ditched and drained and the overlay of mud plowed under.

During Kirk's cross-examination a deed dated November 26, 1957, was introduced in evidence by which plaintiffs conveyed to the Commonwealth a parcel of land needed for location and improvement of the highway. In this instrument the highway project plan and specifications are mentioned and identified, and the grantors covenant that the considerations paid to them "shall be in lieu of any and all claims to compensation and damages by reason of the loca-

tion, construction, and maintenance of said highway, including such drainage facilities as may be necessary."

Velma P. Kirk testified that vibrations from blasting cracked the house so that light, wind and rain came in, and it "took a lot of towels and mopping" to absorb the water, and after each blasting there would be mortar on the floor. She said the spring water is now muddy and the pressure down; occasionally there would be no water at all, and they hauled it from elsewhere. At times insufficient pressure would occur for 24-hour periods or longer.

Two building contractors who inspected the house testified that there were numerous cracks in the walls, doors, concrete floors, and window sills. One said there were 33 cracks in the mortar on the south side; 24 on the east side; 39 on the north side, and 96 on the west, a total of almost 200. The cracks were not in the blocks but in the mortar and horizontal, and they explained that cracks from settling are vertical and in a somewhat zigzag line but not horizontal. They stated that grinding out the old mortar and putting in new would cost an estimated $1,400 to $1,500, but it would be a patched job with resultant permanent damage of $1,000.

J. E. Williams testified that on March 6, 1958, prior to any blasting, he and Cecil Lyle inspected the property and found no cracks in the building. When he inspected it in July, 1958, he found cracks. He said the highway area was more or less solid rock and blasting was necessary to build the road, but he did not think there was any excessive blasting.

L. G. Farris, a Highway Department inspector, testified as to the size of the various blasts fired for the purpose of grading the road as follows: On March 6, 1958, 4,000 pounds about 550 feet from the dwelling: March 7, 3,250 pounds about 550 feet from the house; April 2, 3,250 pounds, 600 feet away; April 4, 8,750 pounds, 750 feet away; April 9, 3,700 pounds, 550 feet away; April 16, 6,700 pounds, 800 feet away; April 23, 7,100 pounds, 750 feet away; April 30, 1,350 pounds, 600 feet away; July 5, 1,150 pounds, 600 feet away; July 12, 2,000 pounds, 800 feet away.

He viewed plaintiffs' house on July 1, with Lyle and Williams and observed cracks in the wall "between the joint of the block running transversely around the house from the front to the rear of the floor elevation," a vertical crack in the rear, and small cracks around the windows from the lintels vertically downward. When he inspected the reservoir some considerable time after the blasting had

begun, he found mud in it and the water level lower than at a previous inspection and thought it was draining subterraneously or through the wall. Inspection of the area between the highway and spring disclosed that an overflow of mud had washed upon the land. He stated that the culvert was installed during the fall of 1958, and a ditch dug therefrom to the branch shortly after Kirk's complaint on May 20. In January, 1959, Kirk again complained about an overflow from a recent heavy rainfall and mud and silt in his spring. They determined it was from the culvert and the insufficient drainage ditch which the contractor had done nothing to rectify. The inadequacy of this drainage facility had not been completely corrected at the time of the trial.

Frank Harper stated that when he sold the property to plaintiffs in 1956, the wall around the reservoir installed by him years ago was in good condition and held water which accumulated until it spilled over the dam. There never had been any mud on the bottom land before the road was constructed.

Harper's house is almost directly in front of the highway cut, and about 400 feet therefrom. He stated that he was at home during about 20 of the 200 shots and could feel his house shake "just like an earthquake had hit it." Some shocks knocked windows out, glasses off the table, and dishes off the shelves. Once when in a filling station a half a mile away, he "felt that service station jerk."

R. A. Wilkinson, Highway Department resident engineer, testified that it is more economical to use large charges of dynamite than small ones, but the Highway Department has no supervision over the methods the contractor uses. Its supervision is only to insure completion of the project according to specifications.

Plaintiffs concede that the principle of *res ipsa loquitur* is not applicable. While there is some conflict in decisions as to whether or not the principle applies to blasting operations, yet the weight of authority seems to be against its applicability. The doctrine's relation to blasting is discussed in 22 Am. Jur., Explosions and Explosives, § 96, p. 214.

There is also conflict in the decisions as to whether or not liability may be imposed for damage caused by blasting irrespective of negligence. Some of the authorities are to the effect that proof of negligence is not necessary, and some to the effect that negligence must be proved before liability is imposed. The divergent views are set forth

and discussed in 20 A. L. R. 1372 and 22 Am. Jur., Explosions and Explosives, § 54, p. 180.

In *Pope* v. *Overbay*, 196 Va. 288, 83 S. E. 2d 365, Overbay sued Pope for damages allegedly done to his house and garage from blasting in a nearby rock quarry operated by defendant. The trial court adopted plaintiff's view that proof of negligence in the blasting was not necessary to recover. Defendant, Pope, denied that the blasting had caused cracks in the plaster and walls of plaintiff's premises, and the issue submitted to the jury was whether or not the alleged damage to Overbay's premises was caused by blasting. The jury's verdict is of aid in determining the scope of the factual and legal issues presented and determined in that case. The verdict follows:

"We the jury find the plaintiff not entitled to recover damages to buildings from the Pope Construction Company due to their (sic) failure to establish the fact that the damage was caused by blasting.

"We the jury find the defendant negligent by not using due precaution to prevent the throwing of rock on defendant's (sic) property and award him the damage of One Dollar ($1.00)." (At page 289)

Overbay moved to set aside the first paragraph of the verdict and enter judgment for him for $1,736, claimed costs of repairs. The court set aside that part of the verdict and entered judgment for $1,150 which "includes the sum of $11 nominal damages" in lieu of $1.00 set by the jury for allowing a stone to be thrown on plaintiff's premises. Upon review by this court the question of whether or not proof of negligence in the blasting was necessary to recovery was not presented or determined. We concluded that the evidence justified and sustained the jury's finding that plaintiff had failed to prove that the blasting caused the cracks in plaintiff's property and resultant damage. That being true, the judgment for $1,150 was vacated, the verdict reinstated, and judgment entered thereon.

Here we need not and do not determine whether liability for damages resulting from blasting may be incurred irrespective of negligence. It is clear from the deed of November 26, 1957, when fairly construed, that plaintiffs knowingly released all claims for damage incurred in construction of the highway except that caused by negligence or departure from the plans and specifications referred to in the deed. No departure from the plans and specifications is claimed.

Plaintiffs, however, contend that negligence may be inferred from the quantity of explosives used, the proximity to the premises of some explosions, the resultant effect on the building, spring and reservoir, and the concussions, vibrations and shocks felt and the results observed by witnesses at more distant locations. They also contend that there is express testimony to show that the drainage facilities were insufficient and improperly installed, and that the resulting overflow of water upon their land is confirmative of that fact.

In *Holland House Co.* v. *Baird*, 169 N. Y. 136, 62 N. E. 149, in adhering to the view that proof of negligence is necessary to impose liability for blasting, the court makes the following observation at page 142:

"That a vibration of the earth, or of the atmosphere, is the invariable accompaniment of an explosion, is a fact of universal observation, or knowledge, and to make that a source of liability, which may be an ordinary result of a lawful work, requires that it shall be made to appear that the explosion was unnecessarily violent and carelessly prepared for, having regard to the place and the surrounding. * * *"

Of like effect is *Republic Steel Corp.* v. *Peoples*, 217 F. 2d 236, 238, where it is said:

"* * * The burden is on the Plaintiffs to show some specific act or acts of negligence, and to show further that such negligence directly contributed to the result. Mere proof that the residential structures were damaged by blasting would not alone sustain the actions. * * *"

In *Caramagno* v. *United States*, 37 F. Supp. 741, 743, action was brought by plaintiff under a special act that allowed him to proceed against the United States as if it were suable for tort. Plaintiff proved that before the blasting there were no cracks in his buildings, *i.e.*, storehouse and a restaurant, but after the blasting there were cracks, and he relied upon that evidence to justify a finding in his favor. In denying recovery the court expressed doubt as to whether the damage, cracking of the walls of the buildings, was caused by the blasting, yet in the course of its opinion it said:

"The doctrine of res ipsa loquitur has no place in actions of this type. *Murphy* v. *Lowell*, 128 Mass. 396, 35 Am. Rep. 381. The burden is on the plaintiff to show some specific act or acts of negligence, and to show further that such negligence directly contributed to the result. * * *"

No expert testimony was offered by plaintiffs to prove that excessive amounts of explosives were used or that the shots were unnecessarily violent and destructive or in dangerous proximity to plaintiffs' premises. Thus the question presented is whether or not negligence in the blasting may be inferred from the resultant effect disclosed by the evidence.

There is no claim that what was done constituted a nuisance or violated any statute or ordinance. Young was engaged in the performance of lawful and necessary work, and negligence is not to be presumed. The burden is upon plaintiffs to prove defendant was negligent. 13 M. J., Evidence, § 52. Lacking evidence that the shots were improperly prepared or fired, and absent any expert testimony that the explosions were excessive or unnecessarily violent, negligence may not be inferred because concussions, vibrations or tremors of earth or air of undetermined and unmeasured intensity were noticeable at considerable distance and cracked plaintiffs' walls and caused the consequential damage complained of. To hold otherwise would permit the jury to indulge in speculation and surmise.

The evidence is insufficient to sustain a recovery for the damages inflicted by the blasting.

■ There is, however, sufficient evidence to sustain a finding that the drainage facilities were negligently constructed and installed and were inadequate to accommodate the volume of water that might reasonably be expected to accumulate in the immediate area. That their faulty construction and inadequacy resulted in damage to plaintiffs is clearly shown by the evidence.

The motion for judgment charged two separate torts or causes of action arising out of construction of the highway. It is alleged in separately numbered paragraphs (as required by Rule of Court 3:18) that Young (1) "carelessly and negligently and without due care" caused large blasts, commonly known as "shots" to be made with high explosives which resulted in concussion and shaking of plaintiffs' premises and thereby caused damage to their property, and (2) "carelessly and negligently" installed a drainage system which caused excess water to collect and flow in an artificial channel, carrying mud upon the premises and into plaintiffs' spring. Then the amount of damage caused to the house is stated and that caused to the land by overflowing water is specified.

In Young's answer and grounds of defense the two charges are separately answered, yet we are unable to determine from the verdict

whether a finding was made by the jury in favor of plaintiffs on one or both of the alleged causes of action. Having determined that the evidence is insufficient to justify a finding for them on the alleged negligent blasting but sufficient to find for them on the alleged negligent construction of the drainage facilities, the judgment will be reversed, the verdict set aside, and a new trial ordered limited to the cause of action based on negligent construction and installation of the drainage facilities. Section 8-493, Code 1950.

*Reversed and remanded.*