## Richmond

## M. W. WORLEY CONSTRUCTION COMPANY, INC. v. HUNGERFORD, INC.

December 2, 1974.

Record No. 740057.

Present, All the Justices.

*Robert P. Boyle; Fred G. Wood, Jr. (Boyle & Wood,* on brief), for plaintiff in error.

*William M. Sokol (Whitticar, Sokol & Ledbetter,* on brief), for defendant in error.

Harman, J., delivered the opinion of the court.

The trial court's application of the rule of strict or absolute liability for blasting is a primary question presented by this case.

M. W. Worley Construction Company, Inc. (plaintiff or Worley), instituted an action in the trial court to recover the balance allegedly due on a contract with Hungerford, Inc. (defendant or Hungerford), in connection with the construction of a large industrial plant for Westinghouse Electric Company in Culpeper County. Hungerford filed a counterclaim alleging that plaintiff was indebted to it for more than $30,000.00 in damages. The counterclaim contained four counts, namely: (1) breach of contract, (2) negligence, (3) indemnity and (4) breach of warranty.

The parties subsequently stipulated that $17,163.00 was due to Worley from Hungerford under the contract and Hungerford's counterclaim was submitted to the court for determination at a bench trial.

The evidence shows that on September 8, 1971, Hungerford entered into an agreement with W. H. Weaver Construction Company (Weaver), the general contractor who was erecting the plant, to "install the mechanical work" required by Weaver's contract with the owner. The mechanical work included the installation of all water mains, sewers and drainage lines and structures which were a part of the project. The agreement between Weaver and Hungerford contained an indemnity provision making Hungerford responsible for any damage caused to other parts of the project by work performed under Hungerford's contract.

Hungerford subsequently entered into an agreement with Worley, who specialized in the construction of underground utilities, to install the "outside utilities" on the project. Both Hungerford and Worley knew, at the time of their agreement, that the construction site contained substantial strata of rock. They knew that some blasting would be required for Worley to perform its agreement. The agreement, evidenced by a purchase order dated October 22, 1972, provides that Worley, in addition to the agreed price, would receive extra compensation for all blasting required for the removal of rock. The agreement between Hungerford and Worley contained no indemnity provision.

Under its agreement Worley was obligated to install an underground storm drain twenty-two feet north of and parallel to the north wall of the building. To install this drain it was necessary for Worley to dig a ditch from 12 to 16 feet in depth.

On January 27, 1972, while digging this ditch, Worley's employees set off an explosion which resulted in a "fly" of rock and debris which substantially damaged the partially completed roof of the building. The cost of repairing this damage was charged back to Hungerford by Weaver under the indemnity provision of their contract.

The evidence establishes that John Taggart, Worley's superintendent, was familiar with the character of the rock in the area, having previously done blasting on two other jobs there. Taggart, who was an experienced expert in blasting, testified that the rock in the area was very hard, unpredictable and ultrahazardous when blasted. With this knowledge, and because it was necessary to blast in close proximity to the building, he used extraordinary precautions to control the blast and avoid a "fly." These precautions included covering the rock with a layer of dirt approximately one foot in depth, metal explosion mats were then placed over this dirt cover and the mats, in turn, were covered by approximately 2-1/2 feet of dirt. Instead of exploding all charges simultaneously, delayed action detonators were used so that the explosions would occur in sequence at millisecond intervals.

Perry Evans, the only other blasting expert who testified, was familiar with the area, having recently worked on a highway construction project within a quarter mile of the plant. His testimony shows that the precautions taken by Taggart were greater than those which would ordinarily have been taken in the circumstances by those engaged in the trade of blasting.

The trial court ruled that Hungerford was entitled to recover $28,700.00 on its counterclaim. This ruling was predicated upon ". . . the applicability of the rule of absolute liability to this case and also on the basis of Worley's negligence in its performance of the blasting operations . . . ."

The application of the rule of absolute or strict liability to blasting cases in Virginia is an open question. *Young & Sons* v. *Kirk*, 202 Va. 176, 181, 116 S.E.2d 38, 42 (1960). *See* Muse, *Basis of Liability for Blasting in Virginia*, 1 U. Rich. L. Notes 295 (1962).

Blasting is, however, an intrinsically dangerous and ultra-hazardous activity since it is impossible to predict, with certainty, the extent of severity of a blast. This fact has led to almost universal application of the rule of absolute or strict

liability where one lawfully engaged in blasting operations casts rocks or other debris upon adjoining or neighboring premises and causes direct damage to property or causes direct injury to persons. *See* 35 C.J.S., *Explosives*, § 8, pp. 275-76 (1970), Restatement of Torts § 519.

This rule is, however, subject to several exceptions. Restatement of Torts §§ 519-24. One such exception, embodied in § 523, is that the rule is inapplicable ". . . where the person harmed by the unpreventable miscarriage of an ultrahazardous activity has reason to know the risk which makes the activity hazardous and (a) takes part in it, . . . ." One who is the employer of an independent contractor employed to carry on the activity is taking part in it. Restatement of Torts § 523, Comment on Clause (a) at 50.

The doctrine of liability without fault is restricted to injury to adjoining property or to persons thereon and has no application to cases where injury results to those who have reason to know of the risk which makes the undertaking ultrahazardous, take part therein and bring themselves within the area which will be endangered by the miscarriage. *E. I. Du Pont de Nemours & Co. v. Cudd*, 176 F.2d 855, 860 (10th Cir. 1949).

While we adopt the rule of absolute or strict liability for direct damage to neighboring property or direct injury to persons thereon,[1] we also adopt the exception, namely that such rule has no application to persons harmed by the miscarriage of an ultrahazardous activity who had reason to know the risk which made the activity ultrahazardous and, by virtue of privity of contract, take part in it. A sound reason for this distinction exists since one in privity has a right to protect himself by contract, as Weaver did here by the indemnity provision in its agreement with Hungerford, while a person who owns or occupies adjoining land does not enjoy this right.

The second ground underpinning the trial court's judgment for Hungerford was its finding that Worley was negligent in the manner in which it conducted the blasting resulting in damage to the roof of the building.

Such a finding is entitled to the weight of a jury verdict and will not be disturbed unless it is clearly wrong or without

---

[1] The question of indirect damage from concussion or vibration caused by blasting is not before us here so we do not pass upon the application of the rule in those circumstances.

evidence to support it. Code § 8-491, *Slayton* v. *Weinberger*, 213 Va. 690, 691, 194 S.E.2d 703, 704 (1973).

On this point Hungerford relies on the evidence of John Taggart and Perry Evans to sustain the trial court's finding of negligence. Upon reviewing this evidence, however, we find that both of these witnesses testified that the care and caution used in connection with the preparation and firing of the blasts which caused the damage was greater than the precautions which would ordinarily have been taken in the circumstances by those engaged in the trade of blasting.

"The general usage of the business in a given situation is admissible as evidence of what is reasonable and proper to be done in that situation, from which, along with the other (if there be other) pertinent facts and circumstances of the case, the jury are to determine the question of negligence. If there be no conflict of evidence as to the existence of the general usage, and nothing in the evidence tending to show, as to employes, that the usage was not reasonably safe or adequate for its purpose and occasion, and nothing, as to strangers, tending to show that the usage did not afford as high protection as would result from any other known and practical methods of the business, then the usage itself is conclusive evidence of the exercise of ordinary care, and no verdict to the contrary should be upheld." *Jeffress* v. *Virginia Ry. & P. Co.*, 127 Va. 694, 726, 104 S.E. 393, 403 (1920).

We find, therefore, that the trial court erred in finding negligence on the part of Worley since that finding is not supported by the evidence.

The counts in Hungerford's counterclaim based on indemnity and breach of contract likewise find no support in the evidence.

For these reasons we affirm that part of the judgment of the trial court awarding Worley a judgment against Hungerford for $17,163.00 for the balance due under the contract, we reverse the judgment of $28,700.00 entered by the trial court on Hungerford's counterclaim against Worley and enter final judgment here for Worley in the amount of $17,163.00. Code § 8-493.

*Affirmed in part, reversed in part and final judgment.*