Marie RAMSBURG, as personal representative of the Estate of Frederick E. Ramsburg, Plaintiff,

v.

TARGET STORES, INC., Dayton Hudson Corp., Defendants.

Civil Action No. 96–0058–C.

United States District Court, W.D. Virginia, Charlottesville Division.

Oct. 21, 1997.

MICHAEL, Senior District Judge.

### I. Background

#### A. Factual Background

This wrongful death action comes before the court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The decedent, Frederick Ramsburg, was fatally injured on December 8, 1995 when he was struck in the head by flyrock from explosives' blasting conducted at a Stuart's Draft, Virginia construction site. Mr. Ramsburg died the next day, the proximate cause of which was the head injury.[1]

Defendant Dayton Hudson Corporation ("Dayton Hudson" or "Dayton"), a Minnesota corporation, is the owner of the construction site property. Dayton Hudson hired Armada / Hoffler Construction Company ("Hoffler") as the building project's general contractor who, in turn, hired Faulconer Construction Company ("Faulconer") as the subcontractor responsible for the blasting during construction. The project involved the construction of the Target MidAtlantic Distribution Center ("Target Project"). The Target Project's contract expressly provided for performance of excavation site blasting—work inherently ultrahazardous under applicable Virginia law cited *infra*. Employees of Faulconer performed the blasting. Mr. Ramsburg was employed by Patton, Harris, Rust & Associates ("Patton"), another subcontractor, as a concrete inspector. Mr. Ramsburg was working on the Target Project property itself when he was fatally injured; he stood adjacent to, but not in, the immediate blasting area. At the time Mr. Ramsburg was struck by the blasting debris, he stood outside the five hundred foot, curiously-named "safety zone" perimeter within which flyrock posed a known danger.

#### B. Procedural Background

Mrs. Marie Ramsburg, as personal representative of her husband's estate, filed her complaint in the instant action on August 21, 1996. She seeks recovery for the estate under theories of both strict liability and negligence.

Mark Towery, Fairfax, VA, for plaintiff.

Sands, Anderson, Marks & Miller, John Conrad, Richmond, VA, for defendant.

---

1. Defendants do not contest the proximate causation issue.

In COUNT I, the negligence count, the plaintiff charges that Mr. Ramsburg was on the premises of the Target Project lawfully as a business invitee. As such, Mr. Ramsburg was owed the duty of reasonable care and diligence by the defendants in their undertaking of "intrinsically dangerous" and "ultrahazardous" activities, including those carried out on their behalf by others. Moreover, defendants allegedly owed the plaintiff's decedent the duty of reasonable care to warn him of known or constructively known dangers. Finally, defendants allegedly "negligently supervised"[2] Faulconer's blasting practices when the gross negligence of Faulconer was foreseeable and known to defendants.

■ Of course, to the extent that the plaintiff has plead it, a cause of action for negligent supervision is not recognized in Virginia. This court has held as much. *See Hensler v. O 'Sullivan Corp.,* Civil Action No. 94–0040–H (October 31, 1995) (citing *Chesapeake & Potomac Telephone Co. v. Dowdy,* 235 Va. 55, 365 S.E.2d 751 (1988)); *Anderson v. Wiggins,* Civil Action No. 97–0015–C, 1997 WL 470367 (July 15, 1997) (also citing *Dowdy* ).

In COUNT II, Mrs. Ramsburg pleads strict liability in tort for the wrongful death proximately caused by the "intrinsically dangerous and ultrahazardous" activity of blasting. (Complaint at 8, ¶ 19).

Defendants answered with affirmative defenses of assumption of the risk, contributory negligence, and that plaintiff's claim is barred by the Virginia Workers' Compensation Act, Va.Code § 65.2–100 *et seq.*

Mrs. Ramsburg moved for partial summary judgment under Fed.R.Civ.P. 56 on the strict liability count, on the issue of whether her claim is barred by the Virginia Workers' Compensation Act and on defendants' affirmative defense of assumption of the risk. Defendants moved for summary judgment as to all counts.

*I. Magistrate Judge's Report and Recommendation*

Pursuant to 28 U.S.C. § 636(b)(1)(B) and by Standing Order, the court referred this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, subject to review by this court. On September 30, 1997, the Magistrate Judge filed his Report and Recommendation, which recommends (1) that defendant Target Stores, Inc. be dismissed as a party to the action; (2) that plaintiff's motion for partial summary judgment be granted on the issue of whether her instant claims are barred under the Virginia Workers' Compensation Act and that this affirmative defense be stricken; (3) that plaintiff's motion for partial summary judgment as to the strict liability claim (COUNT II) be granted and that defendants' motion for summary judgment as to this count be denied; (4) that plaintiff's motion for partial summary judgment striking the affirmative defense of assumption of the risk be granted and that defendants' motion for partial summary judgment as to the issue be denied; (5) that defendants' motion for summary judgment on plaintiff's negligence claim be denied.

The defendants filed objections to the Magistrate Judge's Report on October 3, 1997 and filed supporting briefs thereafter. Apart from concurring with the recommendation that defendant Target Stores, Inc. be dismissed as a party to the action[3], defendants object to all other recommendations in their entirety. Said objections having been timely and appropriately lodged, this court has undertaken a *de novo* review of the case. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982).

After a thorough examination of the parties' objections, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation itself, this court adopts the Report and Recommen-

---

**2.** Plaintiff never explicitly uses this term but it is implicit in COUNT I: "…Target and Dayton Hudson negligently failed to ensure that Faulconer took all steps necessary to prevent injury and failed to exercise reasonable care in requiring Faulconer to follow safe blasting practices." (Complaint at 6, ¶ 16).

**3.** Because the plaintiff now concedes that Target Stores Inc. is an improper party to this action, the court will adopt the recommendation of the Magistrate Judge and dismiss Target from the case, with prejudice.

dation in its entirety and overrules all objections thereto.

## III. Discussion

### A. Summary Judgment Standard

Summary judgment should be granted if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court should view the evidence and affidavits of the parties in light of the pleadings, drawing all facts and inferences in favor of the non-moving party. *Id.* at 248, 106 S.Ct. at 2510; *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c).

The non-moving party is entitled to have the credibility of all its evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Before the non-moving party must face the burden of demonstrating the existence of a triable issue of fact, the movant must meet its burden of showing the absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Cray Communications, Inc. v. Novatel Computer Systems, Inc.,* 33 F.3d 390, 393–394 (4th Cir.1994).

There must be more than a "scintilla" of evidence to support the non-movant's case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Rather, the evidence must be sufficient to "return a verdict" at trial for the party opposing the entry of judgment. *Id.* The non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Moreover, the existence only of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion. *See Thompson Everett, Inc. v. National Cable Adv.,* 57 F.3d 1317, 1323 (4th Cir.1995) ("[I]f the evidence is 'merely colorable' or 'not significantly probative,' it may not be adequate to oppose entry of summary judgment."). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

### B. The Virginia Workers' Compensation Act

#### 1. The Governing Law

Virginia Code § 65.2–307, the "exclusivity provision" of the Virginia Workers' Compensation Act, reads as follows:

> The rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury, loss of service or death.

*Id.*

■ This exclusivity provision limits the recovery of all persons engaged in the business under consideration to compensation under the Act; it denies an injured person (or, again, his estate or personal representative in a wrongful death action, as here) the right of recovery against any other person unless he is or was a "stranger to the business." *See Doane v. E.I. Dupont De Nemours & Co.,* 209 F.2d 921 (4th Cir.1954); *Rea v. Ford,* 198 Va. 712, 96 S.E.2d 92 (1957).

■ Of course, owners of work projects who contract with others to perform the work during which an employee is injured, if "statutory employers" (employers for purposes of the Act, though not employers-in-fact), come within the ambit of the exclusivity provision. Va.Code § 65.2–302. That section of the Code reads:

> A. When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his *trade, business or occupation* and contracts with any other person (referred to in this section as "subcontractor") for the ex-

ecution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

*Id.* (emphasis added).

■ This section of the Virginia Workers' Compensation Act bars common law tort actions by an employee of a contractor or subcontractor against the owner of the project only if the employee is injured in work which is a part of the owner's "trade, business or occupation." *Evans v. Newport News Shipbuilding & Dry Dock Co.,* 361 F.2d 364 (4th Cir.), *cert. denied,* 385 U.S. 959, 87 S.Ct. 397, 17 L.Ed.2d 304 (1966). Once established that the work done by the subcontractor is part of the owner's "trade, business or occupation," employees of the subcontractor become statutory employees of the owner even though their immediate employer (and employer-in-fact) is the independent contractor. *Snowden v. VEPCO,* 432 F.Supp. 266 (E.D.Va.1976).

■ The test governing statutory employment is whether the independent contractor is performing an indispensable activity normally carried on through employees rather than independent contractors. *See Bassett Furn. Indus., Inc. v. McReynolds,* 216 Va. 897, 224 S.E.2d 323, 327 (1976) ("... where a manufacturer regularly does its own construction work with its own employees" it may be held a statutory employer); *Barber v. Loews Theatres, Inc.,* 355 F.Supp. 136 (W.D.Va.1972) (employee of an independent contractor precluded by the Act from bringing common law action against owner of a project only when independent contractor was performing work generally done by the owner).

■ Plant construction work regularly and customarily done by a manufacturer *itself* is part of its "trade, business or occupation" for purposes of Section 65.2–302. *Walker v. United States Gypsum Co.,* 270 F.2d 857 (4th Cir.1959). On the other hand (in a case not

precisely on point but analogous to the instant matter), an owner of a merchandising business who employed a contractor to make construction alterations in its storage warehouse to facilitate its merchandising activity, has been held: (1) to be free from any obligations under the Act to furnish compensation to the contractor's employees, but (2) to remain liable for its torts. *Sears, Roebuck & Co. v. Wallace,* 172 F.2d 802 (4th Cir.1949).

### 2. The Law Applied

■ Here, it is uncontroverted fact that Dayton Hudson's "trade, business or occupation" is a retail sales business; by no stretch of fact or logic can it be characterized as being in the construction business. While Dayton Hudson does have a Property Development Division (*i.e.,* a construction division), no employee of the division does any "hands-on" construction work. Defendants concede this point in their memorandum in support of their summary judgment motion.[4] Rather, the division is concerned only with construction oversight, the contracting out of jobs, architectural plans, and the like. The division's employees total some 300 out of Dayton's total workforce of 100,000. Dayton Hudson's revenues derive entirely from retail sales; it derived no revenues from construction "business" in 1995, for example.

Dayton Hudson's protestations that it is a "statutory employer" under Va.Code § 65.2–302 are not convincing. Dayton would have the existence of the construction oversight division alone place Dayton into the construction trade for purposes of the Act. Dayton attempts to distinguish *Bassett Furniture* on the ground that the manufacturer in that case "maintained no separate construction division." *Bassett Furniture,* 224 S.E.2d at 327. While the defendants correctly quote the *Bassett Furniture* court, the absence of a construction division was not the dispositive factor in denying statutory employer status to the furniture company in that case. The court also cited the facts that:

[o]nly a negligible fraction of [Bassett's] 7000 employees was trained in construction

---

4. "... the on-site representatives do not get involved in hands-on construction work...."

Defs' Mem. at 33.

skills ... While Bassett had spent $1,000,-000 annually for the last four years on construction work, the evidence was that for the past few years, [it had] contract[ed] most all of the work outside.

*Bassett Furniture,* 224 S.E.2d at 327 (quotations omitted).

The existence of such analogous facts in this case is telling. Again, defendants themselves concede that: Dayton Hudson is in the retail business not the construction business. Dayton derives no revenue from construction and no Dayton employees go out into the field and do construction work.

Under the seminal case of *Bassett Furniture,* the test to determine "statutory employer" status is whether the independent contractor is performing an indispensable activity "normally carried on through employees" rather than independent contractors. 224 S.E.2d at 326. Simply, there is no genuine issue of material fact upon which a jury could find that Dayton's Property Development Division employees normally carried on the construction that, this time, it chose to contract out to others.

Therefore, the court will adopt the Magistrate Judge's recommendation as to the workers' compensation issue, will overrule all objections thereto, and will grant Mrs. Ramsburg's motion for partial summary judgment. As a matter of law, the Virginia Workers' Compensation Act is not Mrs. Ramsburg's exclusive remedy for her husband's fatal injury.

### C. Strict Liability (COUNT II )

#### 1. Strict Liability for Blasting Injuries
##### a. The Governing Law

■ The preeminent blasting case in Virginia law is *M.W. Worley Construction Co., Inc. v. Hungerford, Inc.,* 215 Va. 377, 210 S.E.2d 161 (1974). Until *Worley,* as the court acknowledged, "[t]he application of the rule of absolute or strict liability to blasting cases in Virginia [was] an open question."

210 S.E.2d at 163 (citing *Young & Sons v. Kirk,* 202 Va. 176, 181, 116 S.E.2d 38, 42 (1960).) The *Worley* court adopted the "almost universal application" of strict liability for blasting injuries. *Id.* at 163–64. The court held that strict liability attaches "to injury to adjoining property or to persons thereon...." *Id.* at 164 (citing *E.I. Dupont De Nemours & Co. v. Cudd,* 176 F.2d 855, 860 (10th Cir.1949)).

The *Worley* court continued, however, and held "that such rule [strict liability] has no application to persons harmed by the miscarriage of an ultrahazardous activity who had reason to know the risk which made the activity ultrahazardous and, by virtue of privity of contract, take part in it." *Id.* at 164 (emphasis added). The exception to strict liability for blasting injuries is phrased in the conjunctive; it requires both predicate factual conditions (1) that the plaintiff assumed or knew of the risk of blasting *and* (2) that, by virtue of his being in privity of contract with the defendant, the plaintiff took part in it. *Id.*

##### b. The Law Applied

■ Here, even assuming that Mr. Ramsburg was in privity of contract [5] with Dayton, the construction site owner, or with Faulconer, the subcontractor responsible for the blasting, there is no genuine issue of material fact that Mr. Ramsburg worked at the Target Project construction site as anything other than a concrete inspector. Mr. Ramsburg took no active part in the blasting; he supervised none of the blasting. Dayton Hudson's assertion at oral argument before this court that the Target Project construction was a joint enterprise cuts against Dayton's insistence that Mr. Ramsburg was in privity of contract with the company performing the blasting. Finally, as to assumption of the risk, telling is the fact that when Mr. Ramsburg was fatally struck in the head with

---

5. For purposes of argument in the hearing before the Magistrate Judge, the Magistrate Judge found that the plaintiff "essentially conceded" the privity of contract issue and focused instead on the issue of assumption or knowledge of the risk. This court recognizes that the plaintiff, in fact, has not conceded the privity issue. Because the dispute between the parties in this case, however-

er, most particularly implicates the assumption of the risk element of the *Worley* exception to strict liability, this court focuses especially on that prong of the conjunctive test. In so doing, the court finds, that Mr. Ramsburg did not assume or know of the risk of flyrock when he stood outside the blasting site "safety zone."

blasting flyrock, he stood *outside* five hundred foot "zone of danger" within which blasting flyrock was a known danger and beyond which Mr. Ramsburg had been assured that flyrock posed no risk.

All evidence upon which a reasonable trier of fact could rely indicates that Mr. Ramsburg thought he was safe from flyrock at the distance he stood from the blasting activity. Thus, the "privity of contract and assumption of risk" exception of *Worley* will not defeat attachment of strict liability to Mr. Ramsburg's injuries arising from the inherently dangerous blasting activity.

### 2. The "Off–Premises" Argument

#### a. The Governing Law

Dayton Hudson's objections to the Magistrate Judge's recommendation that Mrs. Ramsburg be granted partial summary judgment on her strict liability claim focuses almost exclusively on the *Worley* decision's language that strict liability for blasting injuries is "restricted to injury to adjoining property or to persons thereon...." *Worley*, 210 S.E.2d at 164 (citing *E.I. Dupont De Nemours & Co. v. Cudd*, 176 F.2d 855, 860 (10th Cir.1949)). Dayton interprets this passage to mean that because Mr. Ramsburg was working on the Target Project property itself, and not on "adjoining property," when he was struck by the flyrock, strict liability cannot attach to his fatal injuries.[6]

■ Dayton Hudson's argument is not well-taken. Dayton erroneously focuses on the "off-premises" *dicta* of *Worley* and *Du Pont* rather than the actual facts of those cases. In both instances, the blasting plaintiffs ultimately were denied recovery only because they fell under the "assumption of the risk and privity of contract" exception. *See Worley*, 210 S.E.2d at 165; *Cudd*, 176 F.2d at 860. In neither case, were the plaintiffs required to have been on "adjoining property" by defendant's definition of "off-premises" as a condition precedent to the attachment of strict liability for blasting injuries. In *Worley*, for example, the property damage at issue was to the roof of a building on the same parcel of property where blasting took place. 210 S.E.2d at 164. Similarly, in *DuPont*, the personal injury at issue arose when defendant's employees "came *upon the premises*" to place nitroglycerin into an oil well and to "shoot" the well by detonating an explosion so as to increase the well's production. 176 F.2d at 856–57 (emphasis added) (injury to person standing on top of the well itself). Thus, Dayton's interpretation of *Worley* and *DuPont* as requiring a blasting plaintiff to have been located "off-premises" before strict liability can attach is belied by the very facts of the cases upon which Dayton relies.[7]

■ As a matter of policy, application of Dayton Hudson's property-based rule of strict liability would yield curiously inconsistent results. Strict liability, or liability without fault, is premised on the reality that certain activities remain "abnormally dangerous" even though the person carrying on those activities exercises the "utmost care" to prevent harm to others. *See* Restatement (Second) of Torts § 519 (1976). The location of a person or property proximately injured by such inherently dangerous activity does not change the justification for a liability regime in which considerations of relative degrees of fault is immaterial. Indeed, as one court has stated, "[T]he basis of [strict] liability is the creation of an abnormal risk. This risk can be present both on and off [a] defendant's premises." *McLane v. Northwest Natural Gas Co.*, 255 Or. 324, 467 P.2d 635, 639–40 (1970). The court continued, an-

---

**6.** As a matter of semantics, the court notes that "adjoining property" and "thereon" may fairly refer logically to the plot of land on which the blasting itself takes place, not that on which the personal or property damage is incurred.

**7.** Dayton is misguided in arguing that, as a matter of the application of the Erie Doctrine, the Magistrate Judge's failure to adopt the *Worley* court's "adjoining property" *dictum*, interpreted as an "off-premises" requirement, constitutes impermissible judicial law-making by a Federal court sitting in diversity. To the contrary, given the facts of *Worley* referenced *supra*, this court would encroach on the autonomy and prerogative of the Commonwealth of Virginia's General Assembly and common law courts were it to engraft onto Virginia's strict liability caselaw the "off-premises" requirement which the Commonwealth's true law-making bodies themselves never have recognized. *See* Amendment X to the Constitution of the United States; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ticipating the potentially curious result of Dayton's proposed strict liability regime entirely dependant on the fortuity of property lines:

[m]ere proximity to the area of danger may or may not be greater in the case of one who is on the premises as compared with one who is not. A person who is off the premises may be only across the street from the explosion while a person on defendant's premises may be a half mile away from it. No relevant distinction which is applicable in all instances is discernible between a person who is one foot within the boundary of defendant's premises as compared with one who is one foot from defendant's premises.

*Id.* at 639–40.

*IV. Conclusion*

Therefore, for the reasons stated above, the court will grant Mrs. Ramsburg's motion for partial summary judgment as to the strict liability count. As a matter of law, Dayton Hudson is strictly liable to the estate of Mr. Ramsburg for the fatal injury he sustained as a proximate result of the explosives' blasting at the Target Project construction site. This ruling of the court is dispositive on the issue of liability; Mrs. Ramsburg may proceed to trial on the issue of damages alone. Accordingly, the court will decline to address Mrs. Ramsburg's negligence count save only to adopt the Magistrate Judge's recommendations and to comment, at the risk of issuing an inappropriate, partially "advisory opinion," that genuine issues of material fact would remain to be tried were Mrs. Ramsburg to elect to proceed on the negligence claim rather than on the strict liability claim's damages only.

An appropriate Order shall issue this day.

## *REPORT & RECOMMENDATION*

CRIGLER, United States Magistrate Judge.

Upon the proposed findings and conclusions set forth from the bench on September 19, 1997, the transcript of which is attached and incorporated herein, it is

### RECOMMENDED

as follows:

(1) Defendant Target Stores, Inc. should be dismissed as a party to this action.[1]

(2) Plaintiff's August 19, 1997 motion for partial summary judgment on the affirmative defense that her claims are barred under the Virginia Workers' Compensation Act should be GRANTED and that this affirmative defense should be stricken.

(3) Plaintiff's August 29, 1997 motion for partial summary judgment imposing strict liability upon defendant for damages arising out of the blast which is the subject hereof should be GRANTED. Defendants' August 29, 1997 motion for summary judgment on this issue should be DENIED.

(4) Plaintiff's August 29, 1997 motion for partial summary judgment striking the affirmative defense of assumption of the risk should be GRANTED and that this affirmative defense be stricken. Defendants' August 29, 1997 motion for summary judgment on the issue of assumption of the risk should be DENIED.

(5) Defendants' August 29, 1997 motion for summary judgment on plaintiff's negligence claim should be DENIED.[2]

The Clerk is directed to immediately transmit the record in this case to the Hon. James H. Michael, Jr., United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached

---

1. Plaintiff conceded that Target Stores, Inc. is not a party to this action.

2. Should this Report and Recommendation be adopted, plaintiff should be given the opportunity to elect whether she wishes to pursue her negligence claim against defendant. If not, the only triable issue would be damages.

by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record. Date September 30, 1997.

TRANSCRIPT OF PROPOSED FINDINGS AND CONCLUSIONS BEFORE THE HONORABLE B. WAUGH CRIGLER UNITED STATES MAGISTRATE JUDGE

September 19, 1997

Charlottesville, Virginia

THE COURT: Frederick Ramsburg was fatally injured on December 8, 1995, when he was struck in the head by fly rock or rock debris from blasting being carried out at a Stuarts Draft, Virginia construction site. Mr. Ramsburg died the next day and there's no dispute in this record that his death was the result of being struck from the fly rock coming from the blast that is the subject of this litigation.

The owner of the construction site was Dayton Hudson Corporation and for reasons that have been articulated by both counsel of record today and during summary judgment proceedings, Plaintiff concedes that the Defendant Target Stores, Inc., is not a proper Defendant in this case and that for all purposes in this case Dayton Hudson Corporation is the proper Defendant.

Dayton Hudson had engaged Armada/Hoffler, which I will call Hoffler, as a project general contractor for purposes of constructing this Target store in Stuarts Draft. In turn, Faulconer Construction Company, Faulconer was hired to do blasting on the site that was necessary in order for the construction to proceed. The Plaintiff's decedent, that is, Frederick Ramsburg, was employed by Patton, Harris, Rust & Associates, another subcontractor which was in charge of concrete inspection and in charge of some other things such as location of fill and so forth. There's no dispute in the facts about that.

This action was instituted by Mrs. Ramsburg as the personal representative, claiming that Dayton Hudson Corporation, also claiming formally that Target Stores, but that has been taken care of, that Dayton Hudson Corporation is liable to the estate under the wrongful death provisions of Virginia law for the death of her husband based on theories of both strict liability, that's Count 1, and negligence, Count 2, and it is over these two Counts that bring the parties today on cross-motions for summary judgment, the Plaintiff moving for partial summary judgment both as to the issue of strict liability and as to the issue of whether Plaintiff's claims are barred under Virginia Workers' Compensation Act and the Defendant moving for summary judgment on the substantive defenses it has assumption of risk, as well as to the defenses it has to the claim of strict liability and negligence.

Now, this case is before the Court under authority of 28 U.S.C. Section 636(b)(1)(B) to render to the District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case.

As indicated, the Court will recommend that Target Stores, Inc., be dismissed as a party Defendant by concession of the Plaintiff in the case and as an aside and even as a footnote, I would suggest that to the extent that the allegations against the Defendant involve negligence supervision, which is an issue that hasn't been really addressed by the parties to any large extent, that the presiding District Court's opinion in *Hensler v. O'Sullivan Corp.*, 9440–H, which was October 1, 1995, holding that there is no cause of action for negligence supervision where special relationships are not present and this isn't one of those cases, should be applied at least to that extent, and if the parties want to argue that later, that's fine, but I think it's a matter that needs to be addressed at this time if for no other reason than to alert the District Judge of this Court's belief concerning the underlying theory of negligence that will be presented before the Court if this case survives summary judgment to any extent.

Now, having said that, let me address first the workers' compensation issue.

There is no question that the law of this State is well established both by statute and decisional authority that when any person, which would include an owner, undertakes to perform or execute any work which is a part of his trade, business or occupation, then the Workers' Compensation Act of Virginia ap-

plies and would bar actions against the employer for any negligence.

Now, that was applied in the case of *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323, a 1976 decision of the Virginia Supreme Court, that held where a manufacturer, an owner, regularly engages in its own construction work with its own employees, then it is held to be a statutory employer for purposes of application of the bar of workers' compensation.

Now, the question is in this case, did Dayton Hudson engage in activities which were work which is a part of its trade, business or occupation. I find that there are no genuine issues of material fact on that and that Dayton Hudson did not engage in the business of construction, even though it did have a department-wide—formulated its department in that regard, I need not answer, but the uncontroverted facts in this case would indicate to this Court that Dayton Hudson was not an employer and was not covered by the effects of the bar of workers' compensation for purposes of Mrs. Ramsburg's action in this case on behalf of the estate.

I can go into detail. I've looked at the facts of the case. It is this Court's opinion that the facts of this case, no reasonable trier of fact could conclude that the Defendant in this case was regularly and customarily involved in the construction operation itself and I think this case is clearly distinguishable from *Bassett* to that extent and that's why the Court is holding as it did and recommends to the District Judge to deny the summary judgment motion based on the bar of worker's compensation and to hold that Dayton Hudson is subject to suit in this case.

Now, let me deal with strict liability next. That is Plaintiff's Count 1 and on this, both the Plaintiff and the Defendant have moved for summary judgment.

By the way, before I get there, I do want to have a footnote to the Court's decision of recommendation that I just made. It is interesting to note in the briefs, particularly the Defendant's brief at page 33. It concedes that there was no on-site representatives that would get involved in the hands-on construction work that was occurring on this project and that certainly isn't controlling, but in this Court's view, it's telling about what the facts are in this case and I did want to make mention of that. They also—the Defendants also concede that Dayton Hudson is in the retail business, not in the construction business. It derives no revenue from construction and no Dayton Hudson employees go out in the field and do construction work. They're all conceded at pages 23 through 28 of the brief—I'm sorry pages 23 deposition and the Defendant's brief at page 4.

Now, moving to the strict liability Count.

There is no question in the Court's mind that the Seminole Blasting case in Virginia is *M.W. Worley Construction Company, Inc. v. Hungerford, Inc.*, 215 Va. 377, 210 S.E.2d 161, a 1974 opinion of the Supreme Court of Virginia. Until *Worley*, it seems to have been acknowledged that the application of the rule of absolute or strict liability to blasting cases was an open question. *Worley* recognized that itself. You can also see *Young & Sons v. Kirk*, 202 Va. 176, 116 S.E.2d 38.

Now, the *Worley* Court adopted what it considered to be "the almost universal application of the rule of absolute or strict liability where one lawfully engaged in blasting operations casts rocks or other debris upon adjoining or neighboring premises and causes direct damage to property or causes direct injury to persons."

Now, *Worley* continued and it adopted the exception to the general rule of no absolute or strict liability and adopted this rule, this exception; namely, that the rule of non-strict liability has no application to persons harmed by miscarriage of an ultrahazardous activity who had reason to know the risk which made the activity ultrahazardous and by virtue of privity of contract took part in it. Now, that person would not be covered by strict liability and it is that phrase that the parties have parsed in this case more than any other, with the exception to the question of whether strict liability was limited to off premises damages. Synthesized, the exception to the strict liability for blasting, as *Worley* enunciated it, is that the person harmed would have reason to know the risk which made the activity ultrahazardous and by virtue of privity of contract takes part in it.

Now, for argument's sake, Plaintiff has essentially conceded the privity of contract issue, for argument's sake. That is to say, the Defendant's raised that there is privity of contract and the argument presented to the Court was, Judge, take a look at the taking part, if for no other reason.

I'm not saying you conceded it, but you argued it that way today and I want to focus on that because I think it is a critical factor because I believe that if strict liability is not to apply, and we're not going to get into the adjoining issue right not, but is not to apply as a threshold matter, the taking part issue has to be resolved and it can be resolved on one of two bases; first, whether there are material issues of fact about it and secondly, if not, what are the legal conclusions to be drawn.

Now, I don't believe that any reasonable trier of fact could conclude anything but that Mr. Ramsburg was there as a concrete inspector with these other little satellite duties about fill. That's what I think the only evidence in the case is. He was not there to oversee blasting. He was not there to take part in the blasting and no reasonable jury could conclude, without having it set aside, that his activities about where the results of blasting were going to go actually had him taking part in the ultrahazardous activity of blasting.

So consequently, I conclude as a matter of law that Mr. Ramsburg did not take part in the ultrahazardous activity. Therefore, a prong of the non-application of strict liability is missing and so therefore, the only question the Court has to determine is whether location, as in real estate transactions, is important to the application of strict liability and we know in real estate transactions location, location, location—it has everything to do with the marketability in real estate.

This could be looked at two different ways and when I examine it, I want to examine it in the terms of off premises requisite. Is it required under Virginia law that for strict liability to apply, the damage must be off premises, whether it's personal injury of property damage?

Now, it is clear that the Defendants in this case and soon to be Defendant in this case, read *Worley* as strictly as possible and

there's no question that *Worley* was addressing whether there would be liability on premises or off premises and they argue that their position is bolstered by the E.I. *Du Pont de nemours & Co. v. Cudd* case, as well as a line of other cases that they cite in support of their proposition that as long as the blast occurs on premises, there's no strict liability due. That's what it boils down to.

On the other hand, the Plaintiff seems to argue that the zone of danger, a zone of danger principle, that the undisputed facts show that Mr. Ramsburg was outside the 500 foot perimeter that had been established, he was well outside of that, he was in a place that he would have expected to have been in under all reasonable circumstances to limit the risk of being injured by fly rock in this particular case and that the Court ought to construe the off premises requirements or so-called requirements of *Worley* to include out of the zone of danger, particularly when considering personal injury.

I look at it from a little bit different perspective and the question is really posed, in my mind personally, is whether the fortuity of being on one side of a property line or another is the controlling factor for the application of liability under these circumstances. I mean, I really look at it as that. Would Mr. Ramsburg's estate been entitled to recover if he'd been the same distance from the blast, but fortuitously on the opposite side of the property and I am not at all convinced that the public policy that has been asserted and applied by the Supreme Court of Virginia dealing with blasting activities and injury to people who aren't in some way benefitting from the blasting operations in the first instance is dependent upon the fortuitous place of the injury. I'm just not convinced at all and I put that because all of the decisions seem to recognize that if a landowner is willing to last these blasting operations occur on his or his property, then it probably doesn't have any room to complain about damage resulting from the blasting whereas when you get into people who were on the premises, for whatever reason, then the question becomes, does that policy still apply and the Court can think of a myriad of circumstances where people can be on the

premises innocently and outside the zone of danger and be struck and the question then arises whether or not you're going to keep them from potentially recovering because of the fortuity of the fact that they weren't 5 feet away, 10 feet away or 1000 feet away on the other side of the property.

To put it differently, I do not believe that whether the injury occurs on premises or off premises is the touchstone for recovery of personal injury when it comes to blasting whereas all of the public policy reasons for holding the owner of the property up to the very thing that he or it is permitting to occur on his property for profit or not is certainly reasonable. So therefore, I do not believe there is an on premises bar or requirement and this may very well be a matter that reasonable judges or even unreasonable judges would disagree over, but I've struck the issue here and I hold that it's not required and recommend that the District Judge grant the Plaintiff's for partial summary judgment on strict liability. Moreover, I am not persuaded by the arguments that seem to be interrelated here about assumption of risk, both as a defense and as a part of the requirements for the person who is within the zone of danger, so to speak, or outside the zone of danger, yet still hurt. I'm not persuaded here.

There are a couple of things that weren't mentioned in argument, but one was mentioned in the brief and it deals with the assumption of risk issue and to the extent they spill over, I think I need to deal with it.

I believe that it is ensconced in Virginia law that a person is not required to make a choice between disobeying an employer and being in a particular site. The case law for that was cited by the Plaintiff in her brief. So therefore, this Court has difficulty in even believing that the defense of assumption of risk can be asserted in this particular case because Mr. Ramsburg had a choice of either getting away and not performing his duties or being there and performing his duties and getting killed and I don't believe the law would make him decide between the two. If there are no other lines of cases that are better examples of that, the lines of cases involve people that are working on highways for the Highway Department or construction companies are certainly the types of cases

that first come into the Court's mind. *Marshall v. Gochenour* out of the Supreme Court of Virginia was a classic example of a worker on a road that was killed. I only remember that because it was my case.

So with that backdrop in mind, let me deal with this assumption of risk issue as it applies both to the strict liability and to the defense overall, both as to strict liability and to negligence.

I believe that assumption of risk cannot apply in this case as a matter of law because to so hold with respect to the strict liability issue is to hold that simply by going onto the job site, you assume the risk of being injured or killed from any source and simply because you know that blasting may be going on, then no matter how much care you exercise for your own safety based on the circumstances of the case, you will be barred from recovery. I do not believe that Virginia law would say that. If anything, this may be a contributory negligence case, assuming negligence is still a concern in the case. I certainly wouldn't make the same conclusion with respect to whether or not Mr. Ramsburg was contributorily negligent. I think that's a question of fact, but there's certainly not enough facts in this case to suggest he assumed the risk and because I made a finding concerning the taking part in for purposes of the strict liability, it's almost unnecessary for me to determine whether he was engaged—whether he had reason to know that the activity that he was actually engaged in exposed him to the risk of injury from the ultrahazardous activity.

Let me deal with negligence.

I will recommend and do recommend to the District Judge to grant Claimant's partial summary judgment on assumption of risk.

MR. TOWERY: On strict liability, Your Honor?

THE COURT: On strict liability, and I think it would equally apply to the defense as it may pertain to negligence. That's why I mentioned it in both contexts.

MR. TOWERY: Did you mean assumption of risk also?

THE COURT: That's what I just said, assumption of risk, period, in both contexts as contained in the context of what was required for the exception of strict liability to apply, as to Defendant's defense of assumption of risk to the strict liability Count and to the Defendant's assertion of assumption of risk as to the negligence Count. All of those, I find as a matter of law, there was no assumption of risk and that there are no genuine issues of material fact on which that could be found by a juror.

Now, let me deal with the negligence Count and I want to deal with it in this order. As I see Virginia law, an employer of an independent contractor generally is not liable to third parties for injuries caused by the independent contractor's negligence, if any at all, and that's at *Norfolk & Western Railway v. Johnson* case, 207 Va. 980, 154 S.E.2d 134 (1967).

However, it is recognized in Virginia, and I believe it's the *Kesler* case, *Kesler v. Allen* *233* Va. 130, 353 S.E.2d 777 (1987) and following, a 1987 Supreme Court of Virginia case, that says essentially that the well-established rule limiting liability has with it an equally well-established exception and that is that the doctrine of respondeat superior, that is, vicarious liability, may apply if the independent contractor's tort arises out of work that is inherently dangerous. It is my conclusion as a matter of law based on clear principles in Virginia that blasting is inherently dangerous. It's ultrahazardous. *Worley Construction* recognized that, 215 Va. 377, 379, 210 S.E.2d 161.

So therefore, on a threshold basis, there can be vicarious liability of the owner for acts of the independent contractor where inherently dangerous ultrahazardous activity occurs.

Now, let me talk about *Bieger* and those cases because the next issue to resolve is what's the duty and where is it in this case.

All of the cases Defendant cites about duties to invitees, that's well-established law in Virginia. The duty to an invitee is less than it is to—I mean, to a licensee is less than it is to an invitee. But I think the Plaintiff's suggestion the Court has to distinguish between conditions and conduct or conditions and activity is an important one because if you read *Bigger* from beginning to end, you have to know that in Judge Williams's thinking, because it's revealed in the decision itself, that there is a greater duty on the part of someone who is engaged and conducting ultrahazardous activity because he recognized it as a potentially greater duty for one engaged—having an ultrahazardous condition and the whole premise of liability here is based on what the person who's potentially liable may have known or should have known vis-a-vis, the person injured.

Now, I know that there's argument to the Court concerning what may be the majority rule, the minority rule in other jurisdictions, I just simply do not believe that that finds strong or analogous support in the Virginia decisions about what their position is.

It is this Court's conclusion that Virginia law militates in favor of the Plaintiff on the question of whether or not Defendant had a duty greater than that of a mere licensor and the Court finds that it does because of the activity that was being conducted on the premises. I believe there are genuine issues of material fact in this case about whether that duty was discharged or not, what the appropriate standards for the blast and all of that were. I think once you get over the vicarious liability issue, then the rest of it deals with whether or not the blaster itself conducted itself in a reasonable manner under the circumstances. So that's why I believe that deciding the respondeat superior issue actually resolves the issue about whether Dayton can be liable in this case and what duty applies to Dayton's liability in the first place because if they're liable vicariously or it is liable vicariously, then it's the standards that apply to the blasting that control.

Now, let's talk about Dayton's own potential negligence in order to cover a potential loophole in the Court's decision.

The Restatement (Second) of Torts Section 413 states: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiarly unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by

the absence of such precautions if the employer fails to provide in the contract that the contractor shall take such precautions or fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

I think there is evidence in this record upon which liability could attach under that standard. There's a great deal of testimony about what reasonable care could have been taken or taking the precautions, could have been provided for for taking the precautions and quite frankly, it's this Court's view that the evidence needs to shake out on that as far as direct liability is concerned about whether it's sufficient to support an ultimate determination by a jury about whether those precautions were or were not taken.

Now, to some extent, if there's going to be a trial irrespective of direct or own negligence on the part of Dayton because of vicarious liability, it can all shake out during the course of the trial. Quite frankly, that's some of the Court's thinking because I haven't read every whipstitch of the record before the Court. I'm just telling you I haven't, but I get a sense from the record that I have read that there's evidence supporting at this juncture Dayton's direct liability under the Restatement of 413.

I don't know if there's anything else I haven't covered except for this row you all are having over the Court's construction of its own order, which I'll deal with in just a minute, but is there anything that you believe the Court hasn't covered in its Report and Recommendation concerning the issues in this case? I can guarantee if I haven't, Judge Michael will.

I want to tell you one thing before I conclude this portion. These are very interesting legal issues and what I said earlier on about really enjoying being a part of this, it really is interesting to be a part of the case that may or may not make Virginia law in this area. I'm hoping y'all will still try to work this case out, but that isn't the reason I decided it that way. Reasonable judges may disagree. We'll leave it at that.

I know y'all went through a great deal of detail in your briefs and they were long and they were pithy, but I want to say this is one of those rare occasions I just didn't find that y'all were wasting paper. I really didn't because you came in here and conceded at least one point with respect to Target. That got that out of the way. They didn't stand up and argue a whole lot on the workers' comp issue, got that out of the way and you really argued over the matters that count in that case and I appreciate that.

These will be the recommendations to the District Court. There are two things I'm going to do. I'm going to direct that the transcript of these proceedings be typed up, particularly the verbal recommendation I've announced from the bench so that when that comes in, I will do a written report and your ten days won't run until that's filed. I'm not going to sandbag you on that one.

My written report will be very laconic. It will just simply say for the reasons I've set forth here, I recommend as follows, essentially, to grant the summary judgment motion in part of the Plaintiff and deny on behalf of the Defendant and to deny in part the Plaintiff's or the Defendant's motion for summary judgment and go to trial on the negligence issues.

MR. TOWERY: I'm sorry, Your Honor, when you say grant—

THE COURT: I'm going to recommend that you get summary judgment on strict liability, but still if you're going to trial, it's going to be on the negligence issues. That doesn't obviate that. I might get reversed on the other, so there's going to have to be a trial no matter what if this is upheld.

MR. TOWERY: Your Honor, if the District Court follows the Court's recommendations on strict liability, would there not simply be a trial on damages?

THE COURT: Yeah, but I don't know what y'all will do after that. They may want to appeal.

(Proceedings continued briefly. Proceedings concluded at 11:58 a.m.)

"I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter _____, _____."